IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ABACUS PHARMA INTERNATIONAL, LLC, <br><br> and <br><br> DR. VINCENT DEGENNARO, <br><br> Plaintiffs, <br><br> v. <br><br> DEVON J. SUTHERLAND, | No. _____ <br><br> District Judge _____ <br><br> Magistrate Judge _____ <br><br> **JURY DEMAND** |

**COMPLAINT**

COME NOW Abacus Pharma International, LLC ("Abacus") and Dr. Vincent DeGennaro ("DeGennaro") and hereby file this complaint against attorney Devon J. Sutherland ("Sutherland" or "Defendant"), and in support thereof states as follows:

**INTRODUCTION**

1. Abacus and DeGennaro (hereinafter collectively, "Plaintiff") bring this case against Defendant asserting claims of professional negligence, intentional misrepresentation, and negligent misrepresentation.

2. Defendant represented Plaintiff and Lumley Enterprise, LLC ("Lumley LLC") during the negotiation and drafting of agreements related to the purchase by Lumley LLC of Abacus' Covid-Rapid API Antibody Test Kits (the "Covid Tests").

3. In order to induce Abacus to enter an agreement with Lumley LLC and thereby personally enrich himself, Defendant solicited Plaintiff as a client and undertook to represent

Page 1

Plaintiff in connection with matters and transactions relating to and including the agreement with Lumley LLC.

4. Defendant concealed information from Plaintiff that would have caused Plaintiff to retain different and independent counsel and fundamentally change the nature of its relationship with Lumley LLC.

5. At all times relevant, Defendant misrepresented the terms of the agreements that Plaintiff believed were drafted for Plaintiff's benefit and on Plaintiff's behalf and concealed significant information that, if known to Plaintiff, would have kept Plaintiff from signing the agreement(s) with Lumley LLC.

6. As a result of Defendant's concealment and misrepresentations, Abacus entered into a Purchase Investment Agreement with Lumley LLC (the "PI Agreement") that did not accurately reflect the terms that Abacus had negotiated and agreed to. A copy of the PI Agreement is attached hereto as Exhibit A and incorporated herein by reference.

7. Because the PI Agreement did not accurately reflect the terms that Abacus had agreed to, a dispute arose that ultimately resulted in litigation, a significant loss of business and profits to Plaintiff, and caused other significant damages to Plaintiff.

## PARTIES

8. Abacus Pharma International, LLC is a limited liability company formed in Delaware on or about December 4, 2015, and it is domiciled in and a citizen of Virginia, where its principal place of business is located.

9. Devon J. Sutherland is an individual over the age of eighteen who is a citizen and resident of Sumner County, Tennessee. Sutherland is a practicing attorney with an office located at 879 Greenlea Blvd, Ste 102, Gallatin, TN 37066-3283. On information and belief, Defendant

is only licensed to practice law in the state of Tennessee and is not licensed to practice law in the state of Florida.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds the $75,000.00 threshold and there is complete diversity of citizenship of the parties. Abacus is a Delaware limited liability company owned by only two members: Joe Trentin and DeGennaro. Mr. Trentin is a citizen and resident of the state of Virginia, and DeGennaro is a citizen and resident of the state of Florida; Defendant is a citizen and resident of the state of Tennessee.

11. This Court has personal jurisdiction because Defendant is a citizen and resident of the state of Tennessee.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and/or omissions giving rise to the claims asserted by Plaintiff occurred in or from this District and because Defendant's principal place of business is located in this District.

## FACTS

13. Abacus is a producer and supplier of various diagnostic tests for viruses and diseases, including the Covid Tests which determine the presence of antibodies to the SARS-CoV-2 virus.

14. In April of 2020, Scott Lumley ("Lumley"), on behalf of Lumley LLC, and Dr. Vincent DeGennaro, on behalf of Abacus, began discussing a business relationship between Abacus and Lumley LLC for the purchase by Lumley LLC from Abacus of a quantity of Covid Tests.

15. At that time, Lumley held himself out to be the sole member of Lumley LLC.

16. DeGennaro is the Chief Executive Officer and Medical Director of Abacus.

17. Between April 23 and April 27, 2020, Lumley and DeGennaro communicated the terms of their business agreement to Sutherland, and Sutherland prepared the PI Agreement and other related documents on their behalf and upon their instructions.

18. During this period, DeGennaro believed that Sutherland was representing both parties to the transaction between Abacus and Lumley LLC, and DeGennaro did not know that Sutherland represented Lumley and Lumley LLC in other unrelated matters.

19. During this period, Sutherland never informed DeGennaro or Abacus that he represented Lumley and/or Lumley LLC on other matters unrelated to the transaction between Abacus and Lumley LLC.

20. During this period, Sutherland never communicated to DeGennaro or Abacus that Sutherland had any personal interest in the transaction between Lumley LLC and Abacus, or that there was any conflict of interests between Sutherland and Abacus.

21. During this period, Sutherland never communicated to DeGennaro or Abacus that he was not acting as counsel for Abacus in the transaction, and he did not advise Abacus or DeGennaro to seek independent counsel to review any of the documents that he prepared on their behalf.

22. In fact, on April 26, 2020, Sutherland sent Abacus an engagement letter (the "Engagement Letter"), a copy of which is attached hereto as Exhibit B and incorporated herein by reference, confirming that Abacus had retained Sutherland as counsel in a matter concerning the Covid Tests that were the subject of the PI Agreement between Lumley LLC and Abacus.

23. Through the Engagement Letter and otherwise, Sutherland stated that he had reviewed his client files and verified no conflict of interest existed in relation to Sutherland's representation of Plaintiff. This was untrue.  See Exhibit B.

24. The Engagement Letter intended to create an attorney-client relationship between Sutherland and Plaintiff such that Plaintiff would have "trust and confidence" in Sutherland. The Engagement Letter also contemplated a broad measure of representation and contemplated "Ongoing Representation" on an array of matters "related to the instant claim or otherwise." See Exhibit B.

25. During this period, DeGennaro communicated to Sutherland via email and other means that the following specific terms should be included in any written agreement between Lumley LLC and Abacus:

   i. Lumley LLC would purchase 500,000 Covid Tests from Abacus at a purchase price of $4.5 million dollars;

   ii. The first payment of $2.25 million would be made to Abacus on April 27, 2020;

   iii. The second payment of $2.25 million would be made to Abacus on May 4, 2020, as long as Abacus could verify that production had begun on the Covid Tests ordered by Lumley LLC; and

   iv. Abacus would be permitted to use the funds from the first $2.25 million payment by Lumley LLC for the production of Covid Tests to satisfy pre-existing orders, including a pre-existing order from the state of Florida.

26. During this period, Sutherland communicated to DeGennaro that each of the foregoing specific terms requested by Abacus (hereinafter the "Requested Terms") were or would be included in the PI Agreement.

27. Lumley LLC and Abacus signed an initial version of the PI Agreement on April 24, 2020, and after further discussions, and specific instructions from DeGennaro to Sutherland, they signed a revised and final PI Agreement on April 27, 2020.

Page 5

Case 3:21-cv-00289   Document 1   Filed 04/09/21   Page 5 of 18 PageID #: 5

28. Despite Sutherland's assurances to DeGennaro to the contrary, the final PI Agreement did not include the Requested Terms, and it included onerous provisions in the event of a default by Abacus that were not agreed upon or previously disclosed to Abacus or DeGennaro.

29. Instead of providing that Lumley LLC's second payment was due on May 4, 2020, as long as Abacus could verify that production on the ordered Covid Tests had begun, the PI Agreement provides that the second payment is due on May 4, 2020, "so long as [Lumley LLC] can verify the commencement and delivery of product from the initial investment."

30. The PI Agreement does not define "commencement and delivery" or "product from the initial investment."

31. Instead of a provision permitting Abacus to use the proceeds of the first payment to fulfill prior orders, the PI Agreement provides that Abacus agrees that it will "exclusively use [the first payment] for the production of [Covid Tests] for the fulfillment of the Purchase Order submitted by [Lumley LLC]."

32. The PI Agreement provides that in the event of a default by Abacus, Lumley LLC may, among other drastic remedies, "take ownership in all inventory, components, intellectual property, accounts, and any other asset of the company" whether or not such property is related to the transaction between Lumley LLC and Abacus.

33. Indeed, the final version of the PI Agreement instituted changes that S. Lumley and Sutherland concocted so that Abacus, by acting in a manner it believed to be consistent with the PI Agreement, may be deemed to be in default under the PI Agreement.

34. Lumley LLC failed to make the second payment of $2.25 million on May 4, 2020, despite Abacus having provided confirmation that Abacus had placed a purchase order and wired funds to its Chinese manufacturing firm to begin production of one million Covid Tests.

35. On May 5, 2020, Sutherland sent a letter to DeGennaro asserting that Abacus was in default of the PI Agreement for failure to deliver Covid Tests and that the PI Agreement provides that the second payment was not due until "the initial shipment [of Covid Tests] had been received." Again, at no time did Sutherland ever notify Plaintiff of any actual or potential conflict of interest or termination of representation.

36. On May 6, 2020, DeGennaro responded by email to Lumley LLC and Sutherland stating that the agreement between the parties had never contemplated delivery of any Covid Tests prior to the second payment and all that was required was proof of commencement of production. Accordingly, based on the PI Agreement as understood by Abacus, and as previously confirmed to Abacus by Sutherland, it was Lumley LLC that was in breach for failure to make the second payment when due.

37. After further communications, the parties were unable to resolve their differences, and on May 28, 2020, Lumley LLC filed suit against Abacus and DeGennaro in the Circuit Court of the 11th Judicial District for Miami-Dade County, Florida (the "Lawsuit"). As of the filing of this Complaint, the Lawsuit is still ongoing.

38. On June 15, 2020, Lumley LLC filed a motion in the Lawsuit for the appointment of a receiver over Abacus' business and assets.

39. By Order dated July 3, 2020, a copy of which is attached hereto as Exhibit C and incorporated herein by reference, the court partially granted Lumley LLC's order and appointed a custodian over some of the Covid Tests in Abacus' inventory, and enjoined Abacus from taking certain actions related to other Covid Tests that were in inventory and/or were still in production.

40. After considering the conflicting testimony of S. Lumley and DeGennaro and the *current* evidence before it, the court concluded that the contract was poorly drafted and therefore found, on a preliminary basis, that the evidence suggested that Abacus had breached the PI Agreement by (i) failing to "timely provide information and proof verifying that delivery of the [Covid Tests] had commenced" and (ii) using funds from the first payment for purposes other than fulfilling Lumley LLC's order. Again, Plaintiff believed that its actions at all times relevant were in compliance with the PI Agreement because they trusted Sutherland to incorporate the terms DeGennaro had communicated.

41. On September 11, 2020, Abacus received a letter from Waller, Lansden, Dortch & Davis, LLC ("Waller"), counsel for Wimer Islands, LLC ("Wimer"), informing Abacus that Wimer was asserting its security interest in the PI Agreement between Lumley LLC and Abacus pursuant to the provisions of Wimer's own Investment Agreement with Lumley LLC dated April 24, 2020 (the "Wimer Agreement"). Copies of the letter from Waller and the Wimer Agreement are attached hereto as Exhibits D and E, respectively, and incorporated herein by reference.

42. DeGennaro and Abacus were never informed and had no knowledge of the Wimer Agreement prior to receipt of the letter from Waller.

43. The Wimer Agreement provides that Wimer would invest $4.5 million dollars with Lumley LLC to fund Lumley LLC's agreement with Abacus, and that within 30 days Lumley LLC would return the initial investment plus profit of $1.6 million. The Wimer Agreement provided for ***a $100,000 payment to Sutherland***.

44. Sutherland drafted the Wimer Agreement to ensure the contemplated funds and his fee would flow through Sutherland's IOLTA account, but Sutherland did not disclose the Wimer Agreement to DeGennaro or Abacus.

45. After receipt of the letter from Waller and further investigation, Abacus learned that S. Lumley filed personal bankruptcy well before the beginning of negotiations between Lumley LLC and Abacus.

46. Because Lumley LLC was a single member LLC owned by S. Lumley, by operation of law the membership interests became part of the bankruptcy estate when S. Lumley declared bankruptcy. In other words, S. Lumley had no control over or authority to act for or through Lumley LLC because the bankruptcy trustee held all ownership and control of the company.

47. Because Lumley LLC was part of the bankruptcy estate at the time it was negotiating the PI Agreement with Abacus, S. Lumley was not authorized to act on Lumley LLC's behalf or to bind Lumley LLC to any agreements.

48. By Agreed Order entered in the bankruptcy court dated October 15, 2020, a copy of which is attached hereto as Exhibit F and incorporated herein by reference, Wimer purchased Lumley LLC from the S. Lumley bankruptcy estate for $26,000.

49. At all times relevant to Plaintiffs' claims, Sutherland knew (i) that S. Lumley filed personal bankruptcy prior to the beginning of negotiations between Lumley LLC and Abacus, (ii) that Lumley LLC was an asset of the bankruptcy estate, and (iii) that S. Lumley was therefore not authorized to act on behalf of or legally bind Lumley LLC, but Sutherland concealed these facts from DeGennaro and Abacus.

50. Abacus would not have engaged in the transaction with Lumley LLC if it had been aware of (i) the Wimer Agreement, (ii) S. Lumley's personal bankruptcy, or (iii) that Lumley LLC was an asset of the bankruptcy estate and that S. Lumley was not authorized to act on behalf of or legally bind Lumley LLC.

51. Sutherland, either acting alone or in conjunction with S. Lumley, caused all funds transferred pursuant to the PI Agreement, including the fee payable to Sutherland, to be transferred through his law firm IOLTA account.

52. Sutherland failed to disclose the foregoing circumstances because he knew that if Abacus did not enter into the PI Agreement with Lumley LLC, he would not receive his $100,000 fee pursuant to the terms of the Wimer Agreement.

53. Sutherland misrepresented the terms of the PI Agreement to DeGennaro and Abacus because he knew that if he described them accurately, Abacus would not have entered the PI Agreement and Sutherland would not receive his $100,000 fee pursuant to the terms of the Wimer Agreement.

## DAMAGES

54. As a result of Defendant's actions, Plaintiff has incurred attorney's fees and other legal expenses defending against the Lawsuit and the various motions filed by Lumley LLC therein in an amount in excess of $100,000.00 which amount continues to increase as litigation continues.

55. As a result of Defendant's actions, Plaintiff's inventory has been held up in litigation resulting in lost profits from sales in an amount not less than $2,500,000.00.

56. As a result of Defendant's actions, Plaintiff entered into a contract that did not reflect the terms negotiated between Abacus and Lumley LLC, depriving Plaintiff of the profit that would have been earned if Lumley LLC had made the second payment on May 4, 2020, as the parties had originally agreed, resulting in lost profits in an amount not less than $2,500,000.00.

57. As a result of Defendant's actions, both Abacus and DeGennaro have been damaged in connection with the diminution of the value of Abacus in an amount to be proven at trial.

58. Further, and as a result of Defendant's actions, Plaintiff is entitled to other compensatory and punitive damages in an amount to be proven at trial of this matter.

## COUNT ONE
## PROFESSIONAL NEGLIGENCE (LEGAL MALPRACTICE)

59. Plaintiff realleges every allegation set forth in paragraphs 1 through 58 and incorporates those allegations by reference.

60. To state a claim for attorney malpractice, the plaintiff must allege that (1) that the accused attorney owed a duty to the plaintiff, (2) that the attorney breached that duty, (3) that the plaintiff suffered damages, (4) that the breach was the cause in fact of the plaintiff's damages, and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages. *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001).

61. Defendant knew or should have known that DeGennaro and Abacus reasonably believed that he was representing their interests in connection with the PI Agreement.

62. Defendant affirmatively indicated to DeGennaro and Abacus that he was representing their interests in connection with the PI Agreement (i) expressly in his Engagement Letter to Abacus, (ii) by implication in his communications with DeGennaro discussing the terms of the PI Agreement, and (iii) by omission in his failure to instruct DeGennaro and Abacus that they should seek independent counsel and his failure to disclose his personal conflicts of interest.

63. DeGennaro and Abacus reasonably relied upon Defendant to, at minimum, diligently and accurately transcribe the verbally agreed upon terms of the agreement with Lumley LLC, as relayed to him by DeGennaro, into the written the PI Agreement.

64. DeGennaro and Abacus reasonably relied upon Defendant to disclose significant factors and conflicts of interest that would caution Abacus against relying on Defendant as legal counsel and against entering an agreement with Lumley LLC.

65. Defendant breached his duty to Plaintiff by (i) failing to include the Requested Terms in the PI Agreement and by adding onerous, one-sided, and unnecessary provisions in the event of Abacus' default, (ii) falsely advising Plaintiff that the Requested Terms were included in the PI Agreement and failing to advise Plaintiff regarding the meaning of the actual terms included, (iii) failing to disclose S. Lumley's personal bankruptcy and his resulting lack of authority to act for and legally bind Lumley LLC, and (iv) failing to disclose the Wimer Agreement, Sutherland's fee arrangement therein and the associated conflicts of interest with Plaintiff.

66. Lumley LLC's Lawsuit against Abacus and DeGennaro, the damages suffered by Abacus and DeGennaro therefrom, and other damages stated herein were the direct and foreseeable result of Defendant's negligent drafting of the PI Agreement.

67. By failing to disclose S. Lumley's bankruptcy, the Wimer Agreement, and Defendant's personal interest in the Wimer Agreement, Defendant failed to warn Plaintiff of circumstances that would have resulted in Plaintiff never entering into an agreement with Lumley LLC in the first place.

68. Plaintiff is therefore entitled to judgment against Defendant on this Count One in an amount to be proven at trial.

## COUNT TWO
## INTENTIONAL MISREPRESENTATION (FRAUD)

69. Plaintiff realleges every allegation set forth in paragraphs 1 through 68 and incorporates those allegations by reference.

70. To state a claim for intentional misrepresentation, the plaintiff must allege that (i) the defendant made a representation of an existing or past fact; (ii) the representation was false when made; (iv) the representation was in regard to a material fact; (iv) the false representation was made either knowingly or without belief in its truth or recklessly; (v) plaintiff reasonably relied on the misrepresented fact; and (vi) plaintiff suffered damage as a result of the misrepresentation. *PNC Multifamily Capital Institutional Fund XXVI Ltd. Partnership v. Bluff City Community Development Corp.*, 387 S.W.3d 525 (Tenn.Ct.App.,2012).

71. Defendant misrepresented the terms of the PI Agreement to Plaintiff by indicating that it included the Requested Terms when Defendant knew that it did not.

72. By failing to disclose S. Lumley's personal bankruptcy, Defendant misrepresented to Plaintiff that S. Lumley was authorized to act on behalf of Lumley LLC and to legally bind Lumley LLC.

73. Defendant knew (i) that S. Lumley had filed personal bankruptcy prior to beginning negotiations with Abacus and DeGennaro, (ii) that because Lumley LLC was a single member LLC it became part of S. Lumley's bankruptcy estate, and (iii) that S. Lumley was therefore not authorized to act on behalf of Lumley LLC or to legally bind Lumley LLC.

74. Plaintiff would not have entered the PI Agreement but for Defendant's representations and assurances that the Requested Terms were included and that S. Lumley was authorized to negotiate on behalf of and legally bind Lumley LLC.

75. Defendant made further intentional misrepresentations to Plaintiff by failing to disclose the extent of his relationship with and representation of S. Lumley and Lumley LLC, as well as the full details of the transactions relating to the PI Agreement; Defendant made such

misrepresentations to ensure the PI Agreement would be signed and so Defendant could be personally enriched.

76. Plaintiff suffered damages as a direct and foreseeable result of entering into the PI Agreement in reliance on Defendant's misrepresentations.

77. Plaintiff is therefore entitled to judgment against Defendant on this Count Two in an amount to be proven at trial.

## COUNT THREE
## NEGLIGENT MISREPRESENTATION

78. Plaintiff realleges every allegation set forth in paragraphs 1 through 77 and incorporates those allegations by reference.

79. To state a claim for negligent misrepresentation, a plaintiff must allege that (i) defendant is acting in the course of his business, profession, or employment, or in transaction in which he has pecuniary interest, (ii) defendant supplies faulty information meant to guide others in their business transactions, (iii) defendant fails to exercise reasonable care in obtaining or communicating information, and (iv) plaintiff justifiably relies upon the information. Restatement (Second) of Torts § 552. *Robinson v. Omer*, 952 S.W.2d 423 (Tenn.,1997).

80. Defendant is a licensed and practicing attorney in the State of Tennessee and was acting in such capacity when he drafted the PI Agreement on behalf of Plaintiff and Lumley LLC.

81. At all times relevant to this claim, Defendant was also acting (albeit more generally and broadly) in the course of his business when he solicited Plaintiffs to be his clients and when he collaborated with Lumley LLC to structure the related deals between Lumley LLC and Wimer and between Lumley LLC and Plaintiff.

82. At all times relevant to this claim, Defendant further acted in the course of the "transaction" which was the structured and related deals between Lumley LLC and Wimer and between Lumley LLC and Plaintiff. Without Defendant offering the use of his IOLTA account and his role in the transactions, neither deal would have been consummated.

83. Defendant was personally interested in the transaction between Lumley LLC and Abacus because his fee from the Wimer Agreement depended on Plaintiff entering the PI Agreement with Lumley LLC.

84. Defendant failed to exercise due care in drafting the PI Agreement so that it did not accurately reflect the terms negotiated and agreed to by Plaintiff and did not include the Requested Terms.

85. Defendant represented to Plaintiff that the PI Agreement accurately reflected the terms negotiated and agreed to by Plaintiff, including the Requested Terms, but Defendant knew or should have known that it did not.

86. Defendant knew or should have known that because of his personal bankruptcy, S. Lumley was not authorized to act on behalf of Lumley LLC or to legally bind Lumley LLC.

87. By failing to disclose S. Lumley's personal bankruptcy, Defendant misrepresented to Plaintiff that S. Lumley was authorized to act on behalf of Lumley LLC and to legally bind Lumley LLC.

88. Defendant knew or should have known the existence of the Wimer Agreement, and his personal fee arrangement therein, would have dissuaded Plaintiff from entering the PI Agreement because of the conflict(s) of interest between Defendant and Plaintiff, among other reasons.

89. By failing to disclose the Wimer Agreement, his role in the transactions, and his personal fee arrangement therein, Defendant misrepresented to Plaintiff that there were no conflicts of interest or other significant factors that would have dissuaded Plaintiff from entering the PI Agreement with Lumley LLC.

90. Plaintiff suffered damages as a direct and foreseeable result of entering into the PI Agreement in reliance on Defendant's misrepresentations.

91. Plaintiff is therefore entitled to judgment against Defendant on this Count Three in an amount to be proven at trial.

## COUNT FOUR
## TENNESSEE CONSUMER PROTECTION ACT

92. Plaintiff realleges every allegation set forth in paragraphs 1 through 91 and incorporates those allegations by reference.

93. The Tennessee Consumer Protection Act (the "TCPA") prohibits unfair or deceptive acts or practices affecting the conduct of any practice which is deceptive to the consumer or to any other person. Tenn. Code. Ann. § 47-18-104(b).

94. During all times relevant to Plaintiff's claims, Abacus and DeGennaro were consumers under the TCPA.

95. Defendant's actions set forth above including, without limitation, his acts and omissions in connection with his solicitation of Plaintiff as a client; his role in drafting, presenting, and attempting to enforce the PI Agreement; and his concealment of S. Lumley's bankruptcy, the Wimer Agreement, and the source of funds constitute(d) violations of the TCPA.

96. On information and belief, Defendant engaged in other violations of the TCPA in addition to those set forth herein and which damaged Plaintiff.

97. As a proximate result of the violations of the Tennessee Consumer Protection Act by the Defendant, Plaintiff has been damaged in the amount to be proven at trial. Such damages include, without limitation, Plaintiff's losses in business revenue and business value, Plaintiff's expenses in defending actions connected with the PI Agreement, and Plaintiff's attorneys' fees.

98. The employment of the deceptive act(s) by the Defendant was a willful and knowing violation of the Tennessee Consumer Protection Act.

99. Plaintiff is entitled to judgment and damages against Defendant on this Count Four for Defendant's violations of the TCPA, plus attorneys' fees and treble damages as provided by statute.

## COUNT FIVE
## PUNITIVE DAMAGES

100. Plaintiff realleges every allegation set forth in paragraphs 1 through 99 and incorporates those allegations by reference.

101. Defendant's fraudulent, tortious actions have been known, intentional, willful, malicious, and in bad faith (Tenn. Code. Ann. § 29-39-104(a)(1)).

102. Plaintiff is entitled to punitive damages against Defendant in an amount to be proven at trial.

## COUNT SIX
## ATTORNEYS' FEES

103. Plaintiff realleges every allegation set forth in paragraphs 1 through 99 and incorporates those allegations by reference.

104. Defendants' fraudulent, tortious actions have been known, intentional, willful, malicious, and in bad faith.

105. Plaintiff is entitled to attorneys' fees, costs, and expenses of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a jury trial on all claims so triable and a judgment against Defendant on all counts for damages in an amount of not less than $6,000,000.00, plus interest, costs, attorneys' fees, and such other relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED this the ___ day of _____, 2021.

**BARHAM & MAUCERE LLC**

***/s/ Daniel O. Barham***
Daniel O. Barham, TN BPR # 034103
Scott Raymond Maucere, TN BPR # 027407
Steven G. Fuller, TN BPR # 023267
Zachery S. Darnell, TN BPR # 035914
Admitted to Practice in U.S. District Court
For the Middle District of Tennessee
Attorney for the Plaintiffs
7209 Haley Industrial Drive, Ste 210
Nolensville, TN 37135
Tel: 615.490.8888
attorneys@b-m.law